**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALTA PARTNERS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> SAFETY SHOT, INC., <br><br> Defendant. | Case No. 24-373 |

# COMPLAINT

Plaintiff Alta Partners, LLC ("Alta") files this action against Defendant Safety Shot, Inc. ("Safety Shot") for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of Section 11 of the Securities Act of 1933 (the "Securities Act"), and alleges as follows:

1. Alta brings this action to remedy Safety Shot's breaches of an agreement governing warrants and misrepresentations made about those same warrants.

2. Jupiter Wellness, Inc. ("Jupiter Wellness") made an offering of, among other things, 7,777,777 warrants to purchase shares in Jupiter Wellness (the "Warrants") pursuant to a Form S-1 filed with the SEC on July 19, 2021, amended on July 20, 2021, and deemed effective on July 21, 2021 (the "Form S-1").

3. In September 2023, Jupiter Wellness changed its name to Safety Shot.

4. The Form S-1 included as Exhibit 4.8 a form of Common Stock Purchase Warrant setting out the terms and conditions governing the Warrants (the "Warrant Agreement"). A copy of the Warrant Agreement is attached hereto as Exhibit A.

5. The Warrant Agreement provides that the warrant holders are entitled to exercise the warrants and purchase one share of common stock at a set "strike price."

6. A condition for the cash exercise of the Warrants is that there must be an "effective registration statement permitting the issuance" of the shares to the warrant holder (the "Warrant Shares").

7. In November 2023 and December 2023, Alta and its assignee sought to exercise 198,500 Warrants pursuant to the then-effective strike price of $1.40 per warrant. These exercise requests were denied, purportedly because Safety Shot did not have an effective registration statement permitting the issuance of the Warrant Shares to Alta and its assignee.

8. This was incorrect. As alleged below, the Form S-1—declared effective by the SEC in July 2021—registered the issuance of the Warrant Shares.

9. Alternatively and even assuming that the Form S-1 had not registered the issuance of the Warrant Shares, Safety Shot breached the implied covenant of good faith and fair dealing by delaying the registration of the Warrant Shares and would be liable for multiple misrepresentations in the Form S-1 concerning the registration of the Warrant Shares.

10. As a result of Safety Shot's breach of the Warrant Agreement, Alta and its assignee were unable to exercise the Warrants on favorable terms, purchase Safety Shot's shares for $1.40, and sell them for a higher price on the open market.

11. Alta now seeks damages arising from Safety Shot's breach of the Warrant Agreement.

**PARTIES**

12. Plaintiff Alta Partners, LLC is a limited liability company. Alta's sole member, Steven Cohen, is a resident of and domiciled in Puerto Rico.

13. Alta is the registered holder of 198,500 Warrants of Safety Shot. This includes 85,000 Warrants that Alta attempted to exercise on November 20, 2023 and 113,500 Warrants that Alta's assignee, KDZ Partners, attempted to exercise on December 19, 2023.

14. Pursuant to the Warrant Purchase Agreement dated December 27, 2023 between Alta and KDZ Partners, Alta purchased 113,500 Warrants from KDZ Partners. KDZ Partners further agreed to absolutely and unconditionally assign to Alta all of its right, title, and interest in and to, arising under or in connection with, KDZ Partner's claims, rights, and benefits of such claims against Jupiter Wellness and its successors and assigns related to the Warrants, including claims for breach of the Warrant Agreement.

15. Defendant Safety Shot Inc. is a Delaware corporation with its principal place of business located at 1061 East Indiantown Road, Suite 110, Jupiter, Florida 33477.

## JURISDICTION AND VENUE

16. Subject matter jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Alta and Safety Shot and the amount in controversy substantially exceeds $75,000.

17. Subject matter jurisdiction also exists under 28 U.S.C. § 1331 because the complaint raises questions of federal law regarding the proper interpretation of the Securities Act and federal regulations promulgated thereunder.

18. This Court may exercise personal jurisdiction over Safety Shot pursuant to 28 U.S.C. § 1391 based on the terms of the Warrant Agreement. Section 6.2 of the Warrant Agreement provides that Safety Shot agreed that all legal proceedings concerning the Warrants "shall be commenced exclusively in the state and federal courts sitting in the City of New York," submitted to "the exclusive jurisdiction of the state and federal courts sitting in the City of New York,

Borough of Manhattan," and agreed "not to assert in any suit, action or proceeding" that "such suit, action or proceeding is improper or is an inconvenient venue for such proceeding."

## FACTS

### A.  The Form S-1

19. In the Form S-1, Jupiter Wellness represented that it was registering, among other things, the Warrants and the Warrant Shares.

20. The title of the prospectus accompanying the Form S-1 stated that it was registering "7,777,777 Warrants being offered by the Company" and "7,777,777 shares underlying the Warrants."

21. In describing the offering, Jupiter Wellness similarly confirmed that "[t]his registration statement of which this prospectus is a part also relates to the Offering of the Warrant Shares issuable upon exercise of the Warrants."

22. Jupiter Wellness further represented in the Form S-1 that the 7,777,777 warrants "will be exercisable *immediately* upon issuance."

23. Regarding the registration of the Warrant Shares, Jupiter Wellness stated in the Form S-1 that "[w]e intend to use commercially reasonable efforts to have the registration statement, *of which this prospectus forms a part*, effective when the Company Warrants are exercised."

24. In addition, in calculation the registration fee payable in connection with the Form S-1, Jupiter Wellness stated that it was registering the "[s]hares of common stock underlying Company warrants" and calculated the registration fee for the Warrant Shares as $4,391.27:

CALCULATION OF REGISTRATION FEE

| Title of Each Class of Securities to be Registered | Amount to be Registered[1] | Proposed Maximum Aggregate Offering Price Per Share | Proposed Maximum Aggregate Offering Price | Amount of Registration Fee |
|---|---|---|---|---|
| Shares of common stock offered by the Company[2] | 8,322,426 | $ 4.50 | $37,450,917.00 | $ 4,085.89 |
| Shares of common stock offered by the Selling Stockholders[3] | 622,016 | $ 4.50 | $ 2,799,072.00 | $ 305.37 |
| Company Warrants[4] | - | - | - | - |
| Shares of common stock underlying Company warrants[2] | 8,944,442 | $ 4.50 | $40,249,989.00 | $ 4,391.27 |
| Pre-funded Warrants[4] | - | - | - | - |
| Shares of common stock underlying Pre-funded Warrants | - | - | - | - |
| Underwriter's warrants[4][5] | - | - | - | - |
| Shares of common stock underlying Underwriter's warrants[2][5] | 289,475 | $ 5.625 | $ 1,628,296.87 | $ 177.64 |
| Total: | | | $82,128,274.87 | $ 8,960.17 |

25.     Upon information and belief, Jupiter Wellness paid the $4,391.27 registration fee for the registration of the Warrant Shares.

26.     Jupiter Wellness would not have paid for the registration fee for the registration of the Warrant Shares if it did not intend the register the Warrant Shares pursuant to the Form S-1.

### B. Alta and its Assignee's Attempts to Exercise the Warrants

27.     On November 20, 2023, Alta submitted a notice of exercise for 85,000 Warrants with a $1.40 strike price. The exercise notice was not honored by Safety Shot.

28.     On November 20, 2023, the average trading price for Safety Shot's common stock was $3.96.

29.     Alta has been incurring approximately $3,400 in daily fees in connection with a short position it took in Safety Shot's stock in anticipation of exercising the Warrants.

30.     On December 19, 2023, Alta's assignee, KDZ Partners, submitted an exercise notice for 113,500 Warrants with a $1.40 strike price. The exercise notice was not honored by Safety Shot.

31. On December 19, 2023, the average trading price for Safety Shot's common stock was $4.62.

32. In multiple communications with Alta, Safety Shot's CEO, Brian John ("John"), claimed that the Warrants were not presently exercisable because of the lack of an effective registration statement, but has assured Alta that the effective registration statement was imminent.

33. On November 13, 2023 and November 15, 2023, Alta contacted Safety Shot to confirm whether the Warrants could be exercised.

34. On November 16, 2023, John wrote Alta that "[e]verything was filed this evening" and "you should be able to exercise tomorrow."

35. On November 17, 2023, John wrote that Alta would "[j]ust have to wait for the SEC to give its blessing."

36. On November 20, 2023, John wrote that the Warrants could be exercised "[h]opefully today" and indicated that he "spoke to the SEC" that morning.

37. On December 20, 2023, John responded to an exercise notice and claimed that Alta could not exercise the Warrants in exchange for non-restricted, free trading shares because "the registration statement has not been deemed effective by the SEC."

38. As alleged above, this was incorrect because the Warrant Shares were already registered pursuant to the Form S-1 declared effective by the SEC on July 21, 2021.

39. Alternatively and assuming that the Warrant Shares were not registered pursuant to the Form S-1, Safety Shot inexplicably delayed the registration of the Warrant Shares after July 2021. More than two and a half years have passed since the offering of the Warrant Shares without Safety Shot obtaining an effective registration statement for the Warrant Shares. This is despite Safety Shot's representations in the Form S-1 that the Warrants would be exercisable

"immediately" and that it would use "commercially reasonable efforts" to have an effective registration statement when the Warrants are exercised.

## COUNT I:  Breach of Contract

40. Alta repeats each of the foregoing allegations as if fully set forth herein.

41. The Warrant Agreement is an enforceable contract that Safety Shot expressly assumed.

42. Alta performed its obligations under the Warrant Agreement.

43. Alta is the registered holder of 198,500 Warrants of Safety Shot.

44. Alta and its assignee sought to exercise the Warrants on a cash basis on November 20, 2023 and December 19, 2023, respectively.

45. Pursuant to the clear and unambiguous terms of Section 2 of the Warrant Agreement, Safety Shot was obligated to cause 198,500 Warrant Shares to be transmitted to Alta and its assignee.

46. Safety Shot impermissibly refused to honor the notices of exercise for the Warrants and thus breached and repudiated its obligations under the Warrant Agreement.

47. Safety Shot purportedly refused to honor the notices of exercise because the Warrant Shares were not registered pursuant to an effective registration statement. This was incorrect because the Warrant Shares were registered pursuant to the Form S-1.

48. Accordingly, Safety Shot breached its obligation under the Warrant Agreement to deliver the shares of its common stock.

49. As a direct and proximate consequence of Safety Shot's breach of the Warrant Agreement, Alta and its assignee were denied the opportunity to exercise the Warrants at a strike

price of $1.40 and sell the Warrant Shares at a higher price and thus suffered significant monetary damages in an amount to be determined at trial.

### COUNT II:  Breach of Implied Covenant (in the Alternative)

50. Alta repeats each of the foregoing allegations as if fully set forth herein.

51. Alternatively and assuming that the Form S-1 did not register the Warrant Shares, Safety Shot refused to take steps to timely register the Warrant Shares so that they could be exercised.

52. The Warrants were initially offered pursuant to the Form S-1 declared effective in July 2021, yet Safety Shot still has not obtained an effective registration statement for the Warrant Shares.

53. The Warrant Agreement contains an implied covenant of good faith and fair dealing, obligating its parties to implement the Warrant Agreement as intended and barring them from taking actions to undercut the Warrant Agreement's purpose.

54. Safety Shot breached its duty of good faith and fair dealing by delaying the registration of the Warrant Shares and preventing Alta and its assignee from exercising the Warrants in accordance with their rights under the Warrant Agreement.

55. Safety Shot's breach of its duty of good faith and fair dealing had the effect of destroying or injuring the rights of Alta and its assignee to receive the fruits of the Warrant Agreement.

56. Safety shot acted intentionally and knowingly to deprive Alta and its assignee of the fruits of the Warrant Agreement.

57. As a direct and proximate result of Safety Shot's breach of the implied covenant of good faith and fair dealing, Alta and its assignee have suffered substantial damages in an amount to be determined at trial.

**COUNT III:  Violation of Section 11 of the Securities Act (in the Alternative)**

58. Alta repeats each of the foregoing allegations as if fully set forth herein.

59. Alternatively and assuming that the Form S-1 did not register the Warrant Shares, the Form S-1 contained untrue statements of fact and material omissions of fact regarding the registration of the Warrant Shares.

60. The Form S-1 represented that it was purporting to register the Warrants and the Warrant Shares.

61. The Form S-1 listed the Warrant Shares as part of the calculation of the registration fee, which, upon information and belief, Jupiter Wellness paid to the SEC.

62. The Form S-1 represented that the Warrants would be exercisable "immediately" upon issuance.

63. The Form S-1 further represented that Jupiter Wellness would use "commercially reasonable efforts" to have an effective registration statement when the Warrants are exercised.

64. To the extent Jupiter Wellness did not effectively register the Warrant Shares pursuant to the Form S-1, these statements were false and omitted the material fact that, as it has since claimed, Jupiter Wellness did not intend to register the Warrant Shares on the Form S-1 and that a further registration statement was required for the exercise of the Warrants.

65. Alta and its assignee purchased Warrants traceable for the Form S-1 registration statement.

66. As a direct and proximate cause of the misleading disclosures and/or omissions in the Form S-1 registration statement, Alta and its assignee suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant as follows:

A. Awarding general and compensatory damages in an amount to be determined at trial, including but not limited to liquidated damages pursuant to Section 2(d)(i) of the Warrant Agreement for failure to deliver the Warrant Shares;

B. Awarding costs and disbursements, including attorney's fees, related to this dispute, including an award of attorney's fees and costs pursuant to Sections 6(e) and 6(g) of the Warrant Agreement;

C. Prejudgment and post-judgment interest; and

D. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues that are so triable.

Dated: January 18, 2024
       Hartford, Connecticut

PLAINTIFF, ALTA PARTNERS, LLC

By: */s/ Jeffrey Mueller*
Jeffrey Mueller
Matthew Letten
Day Pitney LLP
Goodwin Square
225 Asylum Street
Hartford, Connecticut 06103
T: (860) 275-0100
jmueller@daypitney.com
mletten@daypitney.com

Gregory Bruno
Day Pitney LLP
605 Third Avenue, 31st Floor
New York, New York 10158
T: (212) 297-5800
gbruno@daypitney.com

*Attorneys for Plaintiff Alta Partners, LLC*