**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALTA PARTNERS, LLC, | |
| Plaintiff, | **Case No. 24-cv-373** |
| v. | |
| SAFETY SHOT, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT SAFETY SHOT, INC.'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

**THE BASILE LAW FIRM P.C**.
390 N. Broadway, Ste 140
Jericho, New York 11753
Tel. 516.455.1500
Fax. 631.498.04 78
*eric@thebasilelawfirm.com*
*chris@thebasilelawfirm.com*

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   FACTUAL BACKGROUND ....................................................................................4

    A.    The July 2021 Registered Offering and S-1 Registration Statement ......................4

    B.    The Warrants ...................................................................................................5

        1.    The Under the Warrant, the Holder Agrees to Conditions and Limitations on Exercise ...........................................................................5

        2.    The Warrant Agreement Contemplates the Absence of an Effective Registration Statement, Where Exercise is Limited. ..................................................................................................6

    C.    Events Subsequent to the July 2021 Offering, Including Company Changes ...........................................................................................................7

        1.    Safety Shot Files a Post-Effective Amendment to Update the Prospectus and Registration Statement ..........................................................8

        2.    The SEC Delays Effectiveness of the Amendment to Clarify the "Significant Shift in the Focus of [the] Company" ...............................8

        3.    Alta Insists on Cash Exercises of the Warrant While SEC Approval of the Amendment Still Pending ..................................................8

    D.    Alta Files Suit for Breach of Contract ...................................................................9

III.  LEGAL STANDARDS ..........................................................................................10

    A.    Rule 12(c) ......................................................................................................10

    B.    Breach Of Contract .........................................................................................10

IV.   ARGUMENT .......................................................................................................12

    A.    Alta has Not Pleaded a Viable Claim for Breach of Contract ..............................12

        1.    The Contract Expressly Stated that Alta Could Not Use Cash Exercise to Obtain Freely-Trading Stock Under these Circumstances ......................................................................................12

        2.    Under Federal Securities Law, Safety Shot Could Not Lawfully Deliver Freely-Trading Stock in Response to Alta's Cash Exercise ...........................................................................................12

B.     The Warrant and Stock was Registered in 2021, but Safety Shot's Filing of a Post Effective Amendment Suspended the Effectiveness of the Registration Statement ...................................................................13

        1.     The Effectiveness of the July 2021 Registration Statement was Suspended on November 16, 2023 When Safety Shot filed the Amendment ...........................................................13

        2.     Safety Shot had a Legal Duty to Update the Prospectus and Registration Statement Pursuant to Federal Securities Law (and the Warrant Contract Itself) ...................................................14

C.     Safety Shot had a Legal Duty to Update the Prospectus Prior to Sale of the Warrant Shares ...........................................................................14

        1.     A Registration Statement Must be Updated or Amended where the Company undergoes Material or Fundamental Changes ...............................................................................14

        2.     Section 5 of the Act Prohibits the Sale of Securities Under a Prospectus that is No longer Accurate ........................................14

        3.     Alta Has Not Stated a Claim Under Section 11 ..........................................15

V.     CONCLUSION ...................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*,
   300 F. App'x 48 (2d Cir. 2008) ...........................................................................................11

*Alta Partners, LLC v. Getty Images Holdings, Inc.*,
   2023 U.S. Dist. LEXIS 193126 (S.D.N.Y. Oct. 26, 2023) ..............................................11, 13

*Brass v. Am. Film Techs., Inc.*,
   987 F.2d 142 (2d Cir. 1993) ...............................................................................................11

*Callahan v. Glob. Eagle Entm't, Inc.*,
   2019 U.S. Dist. LEXIS 90822 (S.D.N.Y. May 30, 2019) ......................................................12

*Finkel v. Stratton Corp.*,
   962 F.2d 169 (2d. Cir. 1992) ...............................................................................................15

*First Inv'rs Corp. v. Liberty Mut. Ins. Co.*,
   152 F.3d 162 (2d Cir. 1998) ...............................................................................................11

*Goldberg v. Pace Univ.*,
   88 F.4th 204 (2d Cir. 2023) ................................................................................................10

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
   568 F. Supp. 2d 349 (S.D.N.Y. 2008) ....................................................................................1

*Lynch v. City of New York*,
   952 F.3d 67 (2d Cir. 2020) ..................................................................................................10

*Kaplan v. Lippman*,
   552 N.E.2d 151 (1990) ........................................................................................................11

*Patel v. Contemp. Classics of Beverly Hills*,
   259 F.3d 123 (2d Cir. 2001) ................................................................................................10

*SEC v. Manor Nursing Ctrs., Inc.*,
   458 F.2d 1082 (2d Cir. 1972) .........................................................................................13, 14

*UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*,
   660 F.3d 643 (2d Cir. 2011) ................................................................................................11

*Wells Fargo Bank, N.A. v. Wrights Mill Hold., LLC*,
   127 F. Supp. 3d 156 (S.D.N.Y. 2015) ..............................................................................10, 12

**Statutes**

15 U.S.C. § 77c(a)(9) ............................................................................................................12

15 U.S.C. § 77e(a)(1) ............................................................................................................12

15 U.S.C. § 77h(d) ...............................................................................................................13

15 U.S.C. § 77j(a) .................................................................................................................14

15 U.S.C. § 77k(a) ................................................................................................................15

**Other Authorities**

3 Securities Law Techniques § 26.01, Matthew Bender 2024 ......................................13

SEC Compliance & Disclosure Interpretations, Question 139.28 (Aug. 14, 2009) ....................13

Williston on Contracts, at § 61B ....................................................................................11

Defendant Safety Shot, Inc. ("Safety Shot"), submits this memorandum of law in support of its motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## I.      **PRELIMINARY STATEMENT**

In November and December 2023, Plaintiff Alta Partners, LLC ("Alta") demanded that Safety Shot deliver 198,000 shares of freely-trading stock in response to its cash exercises of a stock-purchase warrant, but Safety Shot claimed that it could not deliver the stock.  Given that the registration statement was no longer effective, Safety Shot could not legally deliver the stock to Alta, and was not obligated by contract to do so. Through this breach-of-contract litigation, Alta apparently seeks to obtain a remedy that was neither promised by the contract nor permitted by law.

Defendant Safety Shot is a smaller reporting company whose stock is listed on the NASDAQ under the symbol "SHOT."  Prior to September 2023, Safety Shot was known as "Jupiter Wellness, Inc."  Jupiter Wellness changed its name to Safety Shot in September 2023 after acquisition of rights to the Safety Shot drink beverage.[1]  *See* Safety Shot, Inc., Form 8-K (filed Sept. 15, 2023).

This case pertains to certain stock purchase warrants ("Warrant") issued by Jupiter Wellness in July 2021 as a part of a registered public offering.  In that offering, Jupiter Wellness

---

[1] All statements of fact in this Motion come from the Plaintiff's Complaint or exhibits attached thereto or incorporated by reference, or the official documents on file in the SEC public database, EDGAR.  As with a motion under Rule 12(b)(6), the Court's review of a motion under Rule 12(b)(3) may consider the following materials:  "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence."   *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 568 F. Supp. 2d 349, 352 n.1 (S.D.N.Y. 2008).

registered (among other things) the Warrant and underlying warrant shares to be obtained upon exercise of the Warrant ("Warrant Shares") pursuant to a Registration Statement using Form S-1. The Jupiter Wellness Registration was declared effective by the SEC on July 21, 2021.

The Jupiter Wellness-registered Warrants are five-year warrants, carry a strike price of $1.40 per share, and contain a provision allowing for "cashless exercise" if, "at the time of exercise … there is no effective registration statement registering, or the prospectus contained therein is not available for the issuance of the Warrant Shares."  *See* Warrant ECF 1-1 at § 2(c).  Cashless exercise allows the holder to obtain the warrant stock without putting up any cash; the holder just takes fewer shares at exercise, essentially selling back to the company the number of shares needed to pay for the strike price.  *See id*. (showing exercise formula).  Importantly for this case, cashless exercise also permits the holder to obtain freely-trading stock in the absence of a registration statement, in accordance with § 3(a) of the Securities Act of 1933 ("the Act") (codified as 15 U.S.C. § 77c(a)(9)).

Jupiter Wellness officially changed its name to Safety Shot in September 2023.  On November 16, 2023, Safety Shot filed with the SEC a "Post-Effective Amendment" to the Registration Statement to update the prospectus to ensure that the information therein reflected the recent company changes.  *See* **Exhibit 1** annexed to the Declaration of Eric J. Benzenberg ("Benzenberg Decl."), Safety Shot, Inc., Form S-3/A (filed Nov. 16, 2023) ("Amendment"). This action had the effect of suspending the effectiveness of the original Registration Statement until the SEC declared the effectiveness of the Amendment.

On November 20, 2023 and December 2023, Alta attempted cash exercises of 198,500 Warrants.  *See* ECF 1 ("Complaint" or "Compl."), ¶¶ 7, 44.  For reasons not specified, Alta insisted on cash exercise of the Warrants only, and never asked for cashless exercise.  Safety Shot did not

honor Alta's warrant exercises, because the company "did not have an effective registration statement permitting the issuance of the Warrant Shares."  *Id.*

Alta brought suit against Safety Shot in this Court for breach of contract.  *Id.* ¶¶ 40-49. According to Alta, Safety Shot breached the Warrant Agreement because the Warrant Shares had been duly registered under the Jupiter Wellness registration statement in July 2021, and Safety Shot was therefore obligated to deliver the shares per Alta's exercise.  Compl. ¶ 8.  Alternatively, Alta contends that, "even assuming that the [July 2021 Registration Statement] had *not* registered the Warrant Shares," Safety Shot's failure to register the shares for more than two and a half years constitutes (1) a breach of "the implied covenant of good faith and fair dealing," and (2) a violation of Section 11 of the Securities Act of 1933.  *Id.* ¶¶ 50-57 (Count II), 58-66 (Count III).

For the reasons discussed below, Alta's claims fail as a matter of law.  First, Alta's claims about the effectiveness of the registration statement are based on a false binary:  the fact that there was no effective registration statement on November 20, 2023 when Alta exercised the Warrant does *not* mean that there was *never* an effective registration statement to begin with.[2]  Alta ignores that certain events—such as the filing of a post-effective amendment to a registration statement— *suspends* the effectiveness of a registration statement until SEC completes its review of the amendment. *See* 17 C.F.R. § 229.512; SEC Compliance & Disclosure Interpretations, Question 139.28 (Aug. 14, 2009).[3]  In fact, the SEC itself may suspend the effectiveness of a registration statement if it becomes aware of material misstatements contained in a prospectus, *see* 15 U.S.C. § 77h(d).

---

[2] Notwithstanding the indisputable fact of the SEC declaration of effectiveness, Alta could not have obtained a warrant from the July 2021 registered offering unless the Registration Statement were effective.

[3] *Available at* https://www.sec.gov/corpfin/securities-act-sections.html.

Second, the Warrant contract *expressly contemplates* the possibility that there may be no effective registration statement for the Warrant Shares at some point over its five-year life; in that case, the Warrant permits the holder to use *cashless exercise* to obtain the Warrant Shares.

## II.      FACTUAL BACKGROUND

Alta is the registered holder of 198,500 stock-purchase warrants ("Warrants")[4] which were issued as a part of the July 20, 2021 registered offering by Jupiter Wellness, Inc.  *See* Compl. ¶ 2; (also found as *Exh. 4.8* to the [Form S-1 (Registration Statement, filed July 19, 2021)](#) (hereinafter, the "Registration Statement").

### A.      The July 2021 Registered Offering and S-1 Registration Statement

In July 2021 Safety Shot (then called Jupiter Wellness, Inc.) commenced a registered offering of common stock and warrants.  *See* Compl. ¶ 2.  The prospectus and registration statement show an offering of, *inter alia*, 7,236,893 shares of common stock and 7,777,777 warrants to purchase shares of company stock, and lists the securities to be registered as including common stock, warrants, and the shares underlying the warrants.[5]  July 19, 2021 Form S-1 Registration Statement, **Exhibit 2** to Benzenberg Decl.

Page one of the Registration Statement confirms that some of the securities to be registered were being "offered on a delayed or continuous basis pursuant Rule 415 of the Securities Act of 1933."  *Id.*  A "delayed or continuous offering" is necessary where the stock to be registered may not be immediately issued, such as warrant stock that is issued in response to exercise that may

---

[4] 113,500 of Alta's Warrants (and associated rights to sue) were recently purchased from non-party KDZ Partners, *see* Compl. ¶ 14.  However, for the purposes of this motion, neither of these facts appear to be relevant and will therefore not be addressed.

[5] The original offering price for one unit (one share of stock + one Warrant) was $4.50, with the Warrant strike price also stated as $4.50 per share.  Shortly after commencement of the Offering that price was reduced to $2.79 per unit, and $2.79 for the Warrant strike price.  The Warrant strike price was later reduced to $1.40 per share.

occur at any point within the five-year life of the warrant.  *See* 17 C.F.R. § 230.415(a)(1)(iii).  With a delayed offering, the registration statement must contain "Rule 415 undertakings," where the company affirms its ongoing obligation to update the prospectus with current information and/or amend the registration statement if necessary, *e.g.*, where "any facts or events arising after the effective date of the registration statement which … represent a fundamental change in the information set forth in the registration statement."  *See* 17 C.F.R. § 229.512.  The Registration Statement lists these undertakings on pages 80-81.  *See* **Exhibit 2** to Benzenberg Decl., at pp. 80-81, *Item 17 Undertakings*.

## B.    The Warrants

Similar to a stock option, a warrant conveys to the holder the right to purchase a certain number of shares of company stock for a certain price, for a set period of time, usually five years. Unlike a stock option however, a warrant is issued by a company for the purchase of its own shares. When the warrant is exercised, the company issues the holder new shares of stock.  Because newly issued stock is prohibited from sale absent registration, *see* 15 U.S.C. 77e(a), the warrant stock must be either registered with the SEC or otherwise eligible for an exemption from registration prior to "sale" of the stock pursuant to warrant exercise.

### 1.    Under the Warrant, the Holder Agrees to Conditions and Limitations on Exercise

The Warrant Agreement in this case specifically states that the Holder of the Warrant is "subject to the limitations on exercise" set forth in the contract.

> THIS COMMON STOCK PURCHASE WARRANT (the "Warrant") certifies that, for value received, [CEDE & CO.] or its assigns (the "Holder") is entitled, **upon the terms and subject to the limitations on exercise and the conditions hereinafter set forth**, at any time on or after the date hereof (the "Initial Exercise Date") and on or prior to 5:00 p.m. (New York City time) on [      ], 2026   (the "Termination Date") . . ., to subscribe for and purchase from Jupiter Wellness, Inc.,

a Delaware corporation (the "<u>Company</u>"), up to [    ]   shares   (as   subject   to
adjustment hereunder, the "<u>Warrant Shares</u>") of Common Stock.

Warrant at 1.

### 2. The Warrant Agreement Contemplates the Absence of an Effective Registration Statement, Where Exercise is Limited

The main limitation on exercise in the Warrant Agreement is based on the possibility that

there may be no effective registration statement for the warrant shares at the time exercise, a

possibility that is acknowledged by the Holder several times in the Warrant.  Section 2(c) provides

for cashless exercise—which is granted to the Holder only in the event that there is no effective

registration statement or no prospectus in place for the Warrant stock, stating:

> <u>Cashless Exercise</u>. **If at the time of exercise hereof there is no effective registration statement registering, or the prospectus contained therein is not available for the issuance of the Warrant Shares to the Holder**, then this Warrant may also be exercised, in whole or in part, at such time by means of a "cashless exercise"

Warrant at 4 (emphasis added) ECF 1-1.  In the absence of an effective registration statement,

cashless exercise provides the sole means for the holder to obtain freely-trading stock pursuant to

the exemption from registration § 3(a)(9) of the Securities Act.  *See* Warrant at § 2(c) ("If Warrant

Shares are issued in such a cashless exercise, the parties acknowledge and agree that in accordance

with Section 3(a)(9) of the Securities Act,[6] the Warrant Shares shall take on the registered

characteristics of the Warrants being exercised.").

Section 6(f) of the Warrant states that without registration or cashless exercise, the Holder

may only obtain restricted stock upon exercise, stating:

---

[6] Section 3(a)(9) of the Securities Act of 1933 exempts from "the provisions of this subchapter" any security "exchanged by the issuer with its existing security holders exclusively where no commission or other remuneration is paid or given directly or indirectly for soliciting such exchange…" 15 U.S.C. § 77c(a)(9).

(f) Restrictions. The Holder acknowledges that the Warrant Shares acquired upon the exercise of this Warrant, if not registered, and the Holder does not utilize cashless exercise, will have restrictions upon resale imposed by state and federal securities laws.

Warrant at 15 (ECF 1-1).

The provisions for delivery of the Warrant shares in Section 2(d) of the Warrant repeats the refrain:  freely trading stock will be delivered to the Holder's account in two circumstances: cash exercise if there is an effective registration statement, or using cashless exercise if there is not.  Section (d) provides:

d) Mechanics of Exercise.

Delivery of Warrant Shares Upon Exercise. The Company shall cause the Warrant Shares purchased hereunder to be transmitted by the Transfer Agent to the Holder by crediting the account of the Holder  . . .[if]either (A) there is an effective registration statement permitting the issuance of the Warrant Shares to or resale of the Warrant Shares by Holder or (B) this Warrant is being exercised via cashless exercise, **and otherwise by physical delivery of a certificate, registered in the Company's share register in the name of the Holder** or its designee, for the number of Warrant Shares to which the Holder is entitled pursuant to such exercise . . . .

Warrant at 4 (emphasis added).

**C.    Events Subsequent to the July 2021 Offering, Including Company Changes**

The Registration Statement was filed with the SEC on July 19, 2021 and deemed effective by the SEC two days later on July 21, 2021.  *See* Safety Shot, Inc., Form EFFECT (SEC Order) (filed July 21, 2021), **Exhibit 3** to Benzenberg Decl.  The offering closed in September 2021 after all the offered securities were sold.  Company filings indicate (as the SEC later observed) that Jupiter Wellness underwent substantial changes in 2023, culminating with the Company name change.

1.     **Safety Shot Files a Post-Effective Amendment to Update the Prospectus and Registration Statement**

Safety Shot filed its "post-effective Amendment" to the registration statement on November 16, 2023.  *See* Amendment, **Exhibit 1** to Benzenberg Decl.   The first page of the Amendment states, *inter alia*, that the amendment "is being filed pursuant to the *undertakings in Item 17 of the Registration Statement to update and supplement the information* contained" in the original statement declared effective on July 21, 2021.  *Id.*

2.     **The SEC Delays Effectiveness of the Amendment to Clarify the "Significant Shift in the Focus of [the] Company."**

Unlike the original Registration Statement, the SEC did not immediately approve the November 2023 Amendment.  On December 13, 2023, the SEC responded to the Amendment by requesting more information from Safety Shot on "recent acquisitions and dispositions and the name change of your company," as well as "what appears to be a significant shift in the focus of your company and potential products."  *See* SEC Letter, Dec. 13, 2023 (**Exhibit 4** to Benzenberg Decl.) at 2.  Safety Shot remedied the issues and filed a revised amendment.  However, the SEC sent more letters with more questions on January 9, 2024, January 19, 2024, February 1, 2024, and February 8, 2024.  EDGAR filings show that, after each SEC letter, Safety Shot filed a response and newly revised post-effective amendment.  The SEC finally issued a declaration of effectiveness for "Post-Effective Amendment No. 7" on February 13, 2024.

3.     **Alta Insists on Cash Exercises of the Warrant While SEC Approval of the Amendment Still Pending**

Alta sought to exercise the Warrants—on a *cash basis only*—on November 20, 2023 and December 19, 2023, *see* Compl. ¶ 44, *i.e.,* while the post-effective Amendment to the S-1 was still under review by the SEC.  Safety Shot CEO Brian John stated correctly that Alta "could not

exercise the Warrants in exchange for non-restricted, free trading shares" at that time because "the registration statement has not been deemed effective by the SEC." Compl. ¶ 37.

As a consequence, Alta claimed it was "denied the opportunity to exercise the Warrants at a strike price of $1.40 and sell the Warrant Shares at a higher price," Compl. ¶¶ 10, 49; Alta filed suit shortly thereafter.[7]

### D.   Alta Files Suit for Breach of Contract

Alta filed suit in this Court on January 18, 2024, claiming breach of the contract, breach of the duty of good faith and fair dealing, and for violations of Section 11 of the Securities Act.  *See* Compl. at 7-10.  Alta claims that Safety Shot breached the Warrant contract by failing to honor its cash exercises because, contrary to Safety Shot's assertions, the S-1 Registration Statement for the Warrant shares had been declared effective two years prior, on July 21, 2021.

Alta further claims in the alternative that, "even assuming that the Form S-1 had *not* registered the Warrant Shares," Safety Shot's failure to do so for more than two and a half years constitutes (1) a breach of "the implied covenant of good faith and fair dealing," and (2) a violation of Section 11 of the Securities Act of 1933, based on statements in the July 2021 S-1 claiming that the Warrant shares would be registered.  *See* Compl. ¶¶ 58-65.

For the reasons discussed herein, Alta's claims fail as a matter of law.  There can be no reasonable dispute that the Registration Statement duly registered the Warrant Shares.  However, when Safety Shot filed the post-effective Amendment (pursuant to its obligations under the law and the prospectus) the original Registration Statement was no longer effective.  The Warrant contract permitted Alta to obtain the Warrant stock using cashless exercise, but Alta itself chose

---

[7]   Elsewhere Alta reveals that it sought to exercise the Warrant not to purchase Safety Shot's shares for $1.40, and sell them for a higher price on the open market," but to cover its position in a short sale.  *See* Compl. ¶ 29.

not to use cashless exercise.  Alta seems to have filed suit in this Court in the hope that it could

obtain through litigation what it could not obtain under the Warrant agreement or under prevailing

securities law.  Alta's complaint should be dismissed in its entirety, with attorney fees awarded to

the Defendant.

## III.   LEGAL STANDARDS

### A.   Rule 12(c)

The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to

that [for granting] a Rule 12(b)(6) motion for failure to state a claim."  *Patel v. Contemp. Classics

of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).  "The assessment of whether a complaint's

factual allegations plausibly give rise to an entitlement to relief … calls for enough fact[s] to raise

a reasonable expectation that discovery will reveal evidence of illegal conduct."  *Lynch v. City of

New York*, 952 F.3d 67, 75 (2d Cir. 2020).  In assessing a motion for judgment on the pleadings,

"the court may consider all documents that qualify as part of the non-movant's 'pleading,'

including (1) the complaint *or* answer, (2) documents attached to the pleading, (3) documents

incorporated by reference in or integral to the pleading, and (4) matters of which the court may

take judicial notice."  *Goldberg v. Pace Univ.*, 88 F.4th 204, 210 (2d Cir. 2023).  Where the

Complaint is "contradicted by a document either attached" or otherwise "made a part thereof, the

document controls and the court need not accept as true the allegations of the [pleading]."  *Wells

Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 168 (S.D.N.Y. 2015)

(alteration in original) (quoting *Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994)).

### B.   Breach Of Contract

Under New York law, the elements of a breach of contract claim are (i) the existence of a

contract; (ii) performance of the contract by one party; (iii) breach by the other party; and (iv)

damages suffered as a result of the breach." *First Inv'rs Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir. 1998). "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.,* 660 F.3d 643, 649 (2d Cir. 2011). Where the terms of a contract are unambiguous, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss. *See, e.g., Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, 300 F. App'x 48, 49 (2d Cir. 2008). *Alta Partners, LLC v. Getty Images Holdings, Inc.,* 2023 U.S. Dist. LEXIS 193126, (S.D.N.Y. Oct. 26, 2023).

"Warrants are simply 'a contract by which the corporation gives an irrevocable option to the holder to purchase authorized corporate stock within a period of time at a price and upon terms specified in the contract.'" *Brass v. Am. Film Techs., Inc*., 987 F.2d 142, 149 (2d Cir. 1993). Because a warrant is a unilateral contract, the grantor's duty to perform is triggered only when the warrant holder tenders a valid notice of exercise. The exercise of an option is not proper unless it corresponds with the offer in every respect. The optionee must exercise the option "in accordance with its terms within the time and in the manner specified in the option" 1 Williston, *Contracts* at § 61B) (3rd Ed. 1957). Once the optionee gives notice of his intent to exercise the option in accordance with the agreement, the unilateral option agreement ripens into a fully enforceable bilateral contract. *Kaplan v. Lippman*, 552 N.E.2d 151, 153-54 (1990).

## IV.   ARGUMENT

### A.   Alta has Not Pleaded a Viable Claim for Breach of Contract

#### 1.   The Contract Expressly Stated that Alta Could Not Use Cash Exercise to Obtain Freely-Trading Stock Under these Circumstances

Alta has not pled a viable claim for breach of contract, because none of the actions attributed to Safety Shot constitute breach of the Warrant Agreement.  The Warrant Agreement makes clear that, in the absence of an effective registration statement, Alta could only obtain unrestricted Warrant Shares using *cashless exercise*, and Safety Shot was obligated to deliver unrestricted stock *only* if Alta had exercised under that method.  Safety Shot repeatedly informed Alta that the Registration Statement was not effective, but Alta continued to insist on cashless exercise only.[8]

#### 2.   Under Federal Securities Law, Safety Shot Could Not Lawfully Deliver Freely-Trading Stock in Response to Alta's Cash Exercise

Under section 5(a) of the Act, Safety Shot was prohibited from selling Warrant Shares to Alta "[u]nless a registration statement is in effect" for those shares. 15 U.S.C. § 77e(a)(1). *Callahan v. Glob. Eagle Entm't, Inc.*, 2019 U.S. Dist. LEXIS 90822, at *11 n.3 (S.D.N.Y. May 30, 2019).   The Warrant Agreement permitted cashless exercise based on the exemption from registration in Section 3(a) of the Act, which allows exchange of one security for another so long as no cash is exchanged.  15 U.S.C. § 77c(a)(9).  Accordingly, Alta's attempt to gain 198,000 freely-trading shares with cash exercise was not permitted by law.

---

[8] Technically speaking, Alta's attempt at exercise was not in accordance with the terms of exercise specified in the Warrant Agreement.

**B.    The Warrant and Stock was Registered in 2021, but Safety Shot's Filing of a Post Effective Amendment Suspended the Effectiveness of the Registration Statement**

The July 2021 Form S-1 Registration Statement and the SEC's declaration of effectiveness on July 21, 2021 disproves any assertion that the Warrant Shares were never registered.  *See Wells Fargo*, 127 F. Supp. 3d at 168 (where allegations in the complaint are "contradicted by a document either attached" or otherwise "made a part thereof, the document controls and the court need not accept as true the allegations of the [pleading].").

However, because a post-effective amendment requires the same SEC review process as a new registration statement, sales of the underlying security are halted until the SEC declares the amendment effective.  *See* 17 C.F.R. § 229.512; *see also* SEC Compliance & Disclosure Interpretations, Question 139.28 (Aug. 14, 2009); Question 225.01 (Jan. 26, 2009); 3 Securities Law Techniques § 26.01, Matthew Bender 2024 (describing that a post-effective amendment "must be filed with the SEC prior to its use and cannot be distributed until declared effective. As a result, there will be an interruption in the selling process . . ."); *cf.* 15 U.S.C. § 77h(d) (authorizing SEC to suspend effectiveness of any registration statement containing untrue statements of material fact).

1.    **The Effectiveness of the July 2021 Registration Statement was Suspended on November 16, 2023 When Safety Shot filed the Amendment**

In this case, Safety Shot's post-effective Amendment necessarily suspended the effectiveness of the July 2021 registration statement on November 16, 2023.  *Cf. Alta Partners, LLC v. Getty Images Holdings, Inc.*, 2023 U.S. Dist. LEXIS 193126, at *13 (S.D.N.Y. Oct. 26, 2023) (rejecting claim that two-month-old S-4 registration was no longer current where defendant never alleged that material changes to the company that would render the prospectus inaccurate) (citing  *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1098 (2d Cir. 1972).

      **2.**      **Safety Shot had a Legal Duty to Update the Prospectus and Registration Statement Pursuant to Federal Securities Law (and the Warrant Contract Itself)**

Safety Shot could not legally sell the Warrant Stock unless it updated the prospectus to comport with, *inter alia*, the "significant shift in the focus of the company," and any other material changes pursuant to its obligations under 17 C.F.R.§ 229.512 (described below).  Indeed, Safety Shot's post-effective Amendment states expressly that it was "being filed pursuant to the Undertakings in item 17 of the Registration Statement to update and supplement the information contained in the Registration Statement as originally declared effective by the [SEC] on July 21, 2021."  Amendment, **Exhibit 1** to Benzenberg Decl. at p. 3, *Explanatory Note*.

**C.**      **Safety Shot had a Legal Duty to Update the Prospectus Prior to Sale of the Warrant Shares**

      **1.**      **A Registration Statement Must be Updated or Amended where the Company undergoes Material or Fundamental Changes**

If the company undergoes a "fundamental change" after the effective date of the registration statement, it must file a post-effective amendment to a registration to ensure the information is accurate prior to selling statement ensure the information is up to date.  17 C.F.R. § 229.512(a)(1)(ii).

      **2.**      **Section 5 of the Act Prohibits the Sale of Securities Under a Prospectus that is No longer Accurate**

"Section 5(b)(2) of the Act prohibits the delivery of a security for the purpose of sale unless the security is accompanied or preceded by a prospectus which meets all of the requirements under Section 10(a) of the 1933 Act, 15 U.S.C. § 77j(a)."  *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1098 (2d Cir. 1972).   A prospectus that is no longer accurate due to subsequent changes to the company does not meet the requirements of section 10(a).  *Id.*  An

issuer that fails to update a prospectus after material changes is liable for material misstatements under various securities laws, even if the prospectus was not defective when it was originally issued. *Id.*; *see also SEC v. Scott*, 565 F. Supp. 1513 (S.D.N.Y. 1983). When securities may be sold on a delayed basis, the registrant has a duty to update the prospectus (and registration statement). *Finkel v. Stratton Corp.,* 962 F.2d 169 (2d. Cir. 1992).

    **3.**      **Alta Has Not Stated a Claim Under Section 11**

Just as with Alta's "breach of good faith and fair dealing," Alta's claim of a violation under Section 11 of the Act fails: both claims were premised on the provably false allegation that the Warrant Shares were never effectively registered. Section 11(a) of the Act provides that any signatory to a registration statement, director of the issuer, or underwriter may be held liable to purchasers of registered securities if the registration statement contains "an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a).

In this case, there were no untrue statements of material fact in the July 2021 Registration Statement and prospectus that was in place when the Warrant was sold.   Ironically, Safety Shot would have violated Section 11(a) if it had sold to the Warrant Shares to Alta without first amending the Registration Statement.

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, Defendant Safety Shot, Inc., respectfully requests that the Court dismiss the Complaint filed by Plaintiff Alta Partners, LLC, in its entirety.

Dated: April 23, 2024

Respectfully Submitted,

*/s/ Eric J. Benzenberg*
Eric J. Benzenberg, Esq.

*/s/ Christopher R. Basile*
Christopher R. Basile, Esq.

**THE BASILE LAW FIRM P.C**.
390 N. Broadway, Ste 140
Jericho, New York 11753
Tel. 516.455.1500
Fax. 631.498.04 78
*eric@thebasilelawfirm.com*
*chris@thebasilelawfirm.com*