UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALTA PARTNERS, LLC,<br><br>   Plaintiff,<br><br>vs.<br><br>SAFETY SHOT, INC.,<br><br>   Defendant. | Case No. 24-cv-00373-JMF |

## AMENDED COMPLAINT

Plaintiff Alta Partners, LLC ("Alta") files this action against Defendant Safety Shot, Inc. ("Safety Shot") for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of Section 11 of the Securities Act of 1933 (the "Securities Act"), and alleges as follows:

1.  Alta brings this action to remedy Safety Shot's breaches of an agreement governing warrants and misrepresentations made about those same warrants.

2.  Jupiter Wellness, Inc. ("Jupiter Wellness") made an offering of, among other things, 7,777,777 warrants to purchase shares in Jupiter Wellness (the "Warrants") pursuant to a Form S-1 filed with the SEC on July 19, 2021, amended on July 20, 2021, and deemed effective on July 21, 2021 (the "Form S-1").

3.  In September 2023, Jupiter Wellness changed its name to Safety Shot.

4.  The Form S-1 included as Exhibit 4.8 a form of Common Stock Purchase Warrant setting out the terms and conditions governing the Warrants (the "Warrant Agreement"). A copy of the Warrant Agreement is attached hereto as Exhibit A.

5. The Warrant Agreement provides that the warrant holders are entitled to exercise the warrants and purchase one share of common stock (the "Warrant Shares") at a set "strike price."

6. In November 2023 and December 2023, Alta and its assignee sought to exercise 198,500 Warrants pursuant to the then-effective strike price of $1.40 per warrant. These exercise requests were denied, purportedly because Safety Shot did not have an effective registration statement permitting the issuance of the Warrant Shares to Alta and its assignee.

7. This was incorrect. As alleged below and as Safety Shot has conceded in this litigation, the Form S-1 was declared effective by the SEC in July 2021 and registered the issuance of the Warrant Shares.

8. Instead, Safety Shot now wrongly claims that the Warrants were not exercisable between November 16, 2023 and February 9, 2024 because Safety Shot filed numerous post-effective amendments to the Form S-1.

9. In other words, Safety Shot claims that even if the Form S-1 registered the issuance of the Warrant Shares (which is now undisputed), it was still able to take strategically-timed actions that effectively blocked Alta and its assignee from exercising the Warrants when they were "in the money."

10. Safety Shot is wrong, and even if it were correct, it breached the express terms of the Warrant Agreement and the implied covenant of good faith and fair dealing by failing to maintain an effective registration statement for the Warrants and the Warrant Shares and depriving Alta and its assignee of the benefit of the bargain.

11. As a result of Safety Shot's breaches of Warrant Agreement, Alta and its assignee were unable to exercise the Warrants on favorable terms, purchase Safety Shot's shares for $1.40, and sell them for a higher price on the open market.

12. Alta now seeks damages arising from Safety Shot's breaches of the Warrant Agreement and for violations of the Securities Act.

## PARTIES

13. Plaintiff Alta Partners, LLC is a limited liability company. Alta's sole member, Steven Cohen, is a resident of and domiciled in Puerto Rico.

14. Alta is the registered holder of 198,500 Warrants of Safety Shot. This includes 85,000 Warrants that Alta attempted to exercise on November 20, 2023 and 113,500 Warrants that Alta's assignee, KDZ Partners, attempted to exercise on December 19, 2023.

15. Pursuant to the Warrant Purchase Agreement dated December 27, 2023 between Alta and KDZ Partners, Alta purchased 113,500 Warrants from KDZ Partners. KDZ Partners further agreed to absolutely and unconditionally assign to Alta all of its right, title, and interest in and to, arising under or in connection with, KDZ Partner's claims, rights, and benefits of such claims against Jupiter Wellness and its successors and assigns related to the Warrants, including claims for breach of the Warrant Agreement.

16. Defendant Safety Shot Inc. is a Delaware corporation with its principal place of business located at 1061 East Indiantown Road, Suite 110, Jupiter, Florida 33477.

## JURISDICTION AND VENUE

17. Subject matter jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Alta and Safety Shot and the amount in controversy substantially exceeds $75,000.

18. Subject matter jurisdiction also exists under 28 U.S.C. § 1331 because the complaint raises questions of federal law regarding the proper interpretation of the Securities Act and federal regulations promulgated thereunder.

19. This Court may exercise personal jurisdiction over Safety Shot pursuant to 28 U.S.C. § 1391 based on the terms of the Warrant Agreement. Section 6.2 of the Warrant Agreement provides that Safety Shot agreed that all legal proceedings concerning the Warrants "shall be commenced exclusively in the state and federal courts sitting in the City of New York," submitted to "the exclusive jurisdiction of the state and federal courts sitting in the City of New York, Borough of Manhattan," and agreed "not to assert in any suit, action or proceeding" that "such suit, action or proceeding is improper or is an inconvenient venue for such proceeding."

## FACTS

### A. The Form S-1

20. In the Form S-1, Jupiter Wellness represented that it was registering, among other things, the Warrants and the Warrant Shares.

21. The title of the prospectus accompanying the Form S-1 stated that it was registering "7,777,777 Warrants being offered by the Company" and "7,777,777 shares underlying the Warrants."

22. In describing the offering, Jupiter Wellness similarly confirmed that "[t]his registration statement of which this prospectus is a part also relates to the Offering of the Warrant Shares issuable upon exercise of the Warrants."

23. Jupiter Wellness further represented in the Form S-1 that the 7,777,777 warrants "will be exercisable immediately upon issuance."

24. In addition, in calculation the registration fee payable in connection with the Form S-1, Jupiter Wellness stated that it was registering the "[s]hares of common stock underlying Company warrants" and calculated the registration fee for the Warrant Shares as $4,391.27.

25. Upon information and belief, Jupiter Wellness paid the $4,391.27 registration fee for the registration of the Warrant Shares.

26. Regarding the registration of the Warrants and the Warrant Shares, Jupiter Wellness stated in the Form S-1 that "[w]e intend to use commercially reasonable efforts to have the registration statement, of which this prospectus forms a part, effective when the Company Warrants are exercised."

### B. Alta and its Assignee's Attempts to Exercise the Warrants

27. On November 20, 2023, Alta submitted a notice of exercise for 85,000 Warrants with a $1.40 strike price. The exercise notice was not honored by Safety Shot.

28. On November 20, 2023, the average trading price for Safety Shot's common stock was $3.96.

29. Alta intended to exercise the Warrants because Safety Shot's common stock was trading for more than the strike price of the Warrants, meaning that the Warrants were "in the money."

30. On December 19, 2023, Alta's assignee, KDZ Partners, submitted an exercise notice for 113,500 Warrants with a $1.40 strike price. The exercise notice was not honored by Safety Shot.

31. On December 19, 2023, the average trading price for Safety Shot's common stock was $4.62.

32. In multiple communications with Alta, Safety Shot's CEO, Brian John ("John"), claimed that the Warrants were not presently exercisable because of the lack of an effective registration statement, but assured Alta that the effective registration statement was imminent.

33. On November 13, 2023 and November 15, 2023, Alta contacted Safety Shot to confirm whether the Warrants could be exercised.

34. On November 16, 2023, John wrote Alta that "[e]verything was filed this evening" and "you should be able to exercise tomorrow."

35. On November 17, 2023, John wrote that Alta would "[j]ust have to wait for the SEC to give its blessing."

36. On November 20, 2023, John wrote that the Warrants could be exercised "[h]opefully today" and indicated that he "spoke to the SEC" that morning.

37. On December 20, 2023, John responded to an exercise notice and claimed that Alta could not exercise the Warrants in exchange for non-restricted, free trading shares because "the registration statement has not been deemed effective by the SEC."

38. Alta has been incurring approximately $3,400 in daily fees in connection with a short position it took in Safety Shot's stock in anticipation of exercising the Warrants.

**C. Safety Shot's Post-Effective Amendments to the Form S-1**

39. In litigation, Safety Shot has confirmed that the Warrant Shares were registered on the Form S-1 declared effective before Alta and its assignee attempted to exercise their Warrants.

40. For example, in its Motion for Judgment on the Pleadings, Safety Shot stated that the prospectus and registration statement for the Form S-1 "show an offering of … 7,236,893 shares of common stock and 7,777,777 warrants to purchase shares of company stock, and lists the securities to be registered as including common stock, warrants, and the shares underlying the

warrants." (ECF No. 23, Memorandum of Law in Support of Motion for Judgment on the Pleadings at 4; *see also id.* at 9 ("There can be no reasonable dispute that the Registration Statement duly registered the Warrant Shares.").)

41. Because the Warrant Shares were plainly registered on the Form S-1, Safety Shot has been left to argue that Alta and its assignee could not exercise the Warrants in November and December 2023 because Safety Shot had filed various post-effective amendments to the Form S-1 that purportedly had the effect of suspending the offering of the Warrant and Warrant Shares.

42. The filing of the post-effective amendments to the Form S-1 did not suspend Safety Shot's obligation to process and honor notices of exercise for the Warrants. First, the Warrant Agreement does not expressly provide that there must be an effective registration statement for a cash exercise. Second, even if the Warrant Agreement required an effective registration statement, there was an effective registration statement in the form of the Form S-1. Third, the mere filing of a post-effective amendment does not prevent a holder of the Warrants from proceeding with a cash exercise. Accordingly, Alta and its assignee were entitled to exercise the Warrants while the post-effective amendments were pending.

43. Alternatively and assuming that Alta and its assignee could not have exercised the Warrants while the post-effective amendments were pending, Safety Shot cannot avoid the performance of a contractual duty to deliver the Warrant Shares by failing to maintain an effective registration statement and preventing a condition precedent for the exercise of the Warrants.

44. In the Warrant Agreement, Jupiter Wellness expressly agreed that "[e]xcept and to the extent as waived or consented to by the Holder, the Company shall not by any action … avoid or seek to avoid the observance or performance of any of the terms of this Warrant, but will at all times in good faith assist in the carrying out of all such terms and in the taking of all such actions

as may be necessary or appropriate to protect the rights of Holder as set forth in this Warrant against impairment."

45.  Jupiter Wellness further agreed that it would "take all such action as may be necessary or appropriate in order that the Company may validly and legally issue fully paid and nonassessable Warrant Shares upon the exercise of this Warrant" and "use commercially reasonable efforts to obtain all such authorizations, exemptions or consents from any public regulatory body having jurisdiction thereof, as may be, necessary to enable the Company to perform its obligations under this Warrant. "

46.  Moreover, in the Form S-1, Jupiter Wellness expressly warranted that "[w]e intend to use commercially reasonable efforts to have the registration statement, of which this prospectus forms a part, effective when the Company Warrants are exercised."

47.  Safety Shot acted to avoid the observance or performance of the terms of the Warrant Agreement and did not act in good faith or use commercially reasonable efforts to maintain an effective registration statement for the Warrants and the Warrant Shares.

48.  Among other things, Safety Shot did not act sooner to file post-effective amendments to the Form S-1 in order to update the prospectus following Safety Shot's 2021 and 2022 10-K filings. Similarly, Safety Shot did not act sooner to file a post-effective amendment to the extent it believed that it was required to update other information in the Form S-1.

49.  Between November 16, 2023 and February 13, 2024, Safety Shot filed numerous post-effective amendments, which were conveniently timed to prevent Alta and its assignee from exercising the Warrants precisely when Safety Shot's stock price was trading well-above the strike price of the Warrants.

50. On November 16, 2023, Safety Shot filed a post-effective amendment to the Form S-1 purportedly to "include the information contained in the Company's Quarterly Report on Form 10-Q for the three and nine months ended September 30, 2023 that was filed with the SEC on November 16, 2023, (ii) to update certain other information in the Registration Statement, and (iii) convert the Registration Statement on Form S-1 into a registration statement on Form S-3."

51. On November 17, 2023, Safety Shot withdrew the post-effective amendment because it was "erroneously filed with incorrect edgar code."

52. That same day, Safety Shot re-filed its post-effective amendment to the Form S-1.

53. On November 30, 2023, Safety Shot filed a second post-effective amendment to the Form S-1 for the same purported reasons as the first post-effective amendment.

54. On December 27, 2023, Safety Shot filed a third post-effective amendment to the Form S-1, this time purportedly to "(i) include certain missing information on the Company's business and recent developments; and (ii) to rectify a clerical error identified in the filing fee table and offering expenses disclosure within the Registration Statement."

55. On January 12, 2024, Safety Shot filed a fourth post-effective amendment to the Form S-1 for the same purported reasons as the third post-effective amendment.

56. On January 23, 2024, Safety Shot filed a fifth post-effective amendment to the Form S-1 for the same purported reasons for the third and fourth post-effective amendments.

57. On February 5, 2024, Safety filed a sixth post-effective amendment to the Form S-1, again citing the same purported reasons as the third, fourth, and fifth post-effective amendments.

58. On February 9, 2024, Safety filed a seventh post-effective amendment to the Form S-1, yet again citing the same purported reasons as the third, fourth, fifth, and sixth post-effective amendments.

59. On February 13, 2024, the SEC declared effective the post-effective amendment that Safety Shot had filed *seven different times* before finally obtaining approval from the SEC to purportedly resume the offering of the Warrants and the Warrant Shares.

## COUNT I:  Breach of Contract

60. The Warrant Agreement is an enforceable contract that Safety Shot expressly assumed.

61. Alta performed its obligations under the Warrant Agreement.

62. Alta is the registered holder of 198,500 Warrants of Safety Shot.

63. Alta and its assignee sought to exercise the Warrants on a cash basis on November 20, 2023 and December 19, 2023, respectively.

64. Pursuant to the clear and unambiguous terms of Section 2 of the Warrant Agreement, Safety Shot was obligated to cause 198,500 Warrant Shares to be transmitted to Alta and its assignee.

65. Safety Shot impermissibly refused to honor the notices of exercise for the Warrants and thus breached and repudiated its obligations under the Warrant Agreement.

66. Safety Shot purportedly refused to honor the notices of exercise because the Warrant Shares were not registered pursuant to an effective registration statement. This was incorrect because the Warrant Shares were registered pursuant to the Form S-1 and the filing of the post-effective registration statements did not suspend Safety Shot's obligation to process and honor notices of exercise for the Warrants.

67. Accordingly, Safety Shot breached its obligation under the Warrant Agreement to deliver the shares of its common stock.

68. As a direct and proximate consequence of Safety Shot's breach of the Warrant Agreement, Alta and its assignee were denied the opportunity to exercise the Warrants at a strike price of $1.40 and sell the Warrant Shares at a higher price and thus suffered significant monetary damages in an amount to be determined at trial.

**COUNT II:  Breach of Contract (in the Alternative)**

69. Alta repeats each of the foregoing allegations as if fully set forth herein.

70. Alternatively and assuming that Alta and its assignee were not permitted to exercise the Warrants because of the filing of post-effective amendments to the Form S-1, Safety Shot breached the Warrant Agreement by failing to maintain an effective registration statement for the Warrants and Warrant Shares.

71. The Warrant Agreement is an enforceable contract that Safety Shot expressly assumed.

72. Alta performed its obligations under the Warrant Agreement.

73. Safety Shot had an obligation to "not by any action … [to] avoid or seek to avoid the observance or performance of any of the terms" of the Warrant Agreement and "at all times in good faith assist in the carrying out of all such terms and in the taking of all such actions as may be necessary or appropriate to protect the rights of" Alta and its assignee "against impairment."

74. Safety Shot further had an obligation to "take all such action as may be necessary or appropriate" such that it could issue the Warrant Shares upon exercise of the Warrants and "use commercially reasonable efforts to obtain all such authorizations, exemptions or consents from any public regulatory body having jurisdiction thereof, as may be, necessary to enable" Safety Shot to perform its obligations.

75. Safety Shot acted to avoid the observance or performance of the terms of the Warrant Agreement and did not act in good faith or use commercially reasonable efforts to maintain an effective registration statement for the Warrants and the Warrant Shares.

76. Between November 16, 2023 and February 13, 2024, Safety Shot filed numerous post-effective amendments to the Form S-1 that prevented Alta and its assignee from exercising the Warrants.

77. The Warrants were not exercisable for nearly three-months during which Alta and its assignee intended to exercise the Warrants.

78. Safety Shot did not act sooner to file post-effective amendments to the Form S-1 in order to update the financials included in the prospectus following Safety Shot's 2021 and 2022 10-K filings or file a post-effective amendment to the extent it believed that it was required to update other information in the Form S-1.

79. As a result of Safety Shot's breach of the Warrant Agreement, Alta and its assignee were denied the opportunity to exercise the Warrants at a strike price of $1.40 and sell the Warrant Shares at a higher price and thus suffered significant monetary damages in an amount to be determined at trial.

**COUNT III:  Breach of the Implied Covenant of Good Faith (in the Alternative)**

80. Alta repeats each of the foregoing allegations as if fully set forth herein.

81. Alternatively and assuming that Alta and its assignee were not permitted to exercise the Warrants because of the filing of post-effective amendments to the Form S-1, Safety Shot breached the implied covenant of good faith and fair dealing by filing numerous post-effective amendments to the Form S-1 that blocked Alta and its assignee from exercising the Warrants and deprived Alta and its assignee of the benefits of the bargain.

82. The Warrant Agreement contains an implied covenant of good faith and fair dealing, obligations the parties to implement the Warrant Agreement as intended and barring them from taking actions to undercut the Warrant Agreement's purpose.

83. Safety Shot breached its duty of good faith and fair dealing by failing to maintain an effective registration statement for the Warrants and Warrant Shares.

84. Safety Shot's breach of its duty of good faith and fair dealing had the effect of destroying or injuring the rights of Alta and its assignee from exercising the Warrants in accordance with their rights under the Warrant Agreement.

85. Upon information and belief, Safety Shot acted intentionally and knowingly to deprive Alta and its assignee of the fruits of the Warrant Agreement.

**COUNT IV: Violation of Section 11 of the Securities Act (in the Alternative)**

86. Alta repeats each of the foregoing allegations as if fully set forth herein.

87. Alternatively and assuming that Alta and its assignee were not permitted to exercise the Warrants because of the filing of post-effective amendments to the Form S-1, the Form S-1 contained untrue statements of fact and material omissions of fact regarding the exercisability of the Warrant Shares.

88. The Form S-1 represented that Jupiter Wellness "intend to use commercially reasonable efforts to have the registration statement, of which this prospectus forms a part, effective when the Company Warrants are exercised."

89. Safety Shot, which is the successor to Jupiter Wellness, did not use commercially reasonable efforts to have the registration statement effective when Alta and its assignee attempted to exercise the Warrants.

90. Between November 16, 2023 and February 13, 2024, Safety Shot filed numerous post-effective amendments to the Form S-1 that prevented Alta and its assignee from exercising the Warrants.

91. The Warrants were not exercisable for nearly three-months during which Alta and its assignee intended to exercise the Warrants.

92. The Form S-1 did not disclose and omitted that Jupiter Wellness and its successors would have the discretion to suspend the exercise of the Warrants by filing a post-effective amendment to the Form S-1.

93. Alta and its assignee purchased Warrants traceable for the Form S-1 registration statement.

94. As a direct and proximate cause of the misleading disclosures and/or omissions in the Form S-1 registration statement, Alta and its assignee suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant as follows:

A. Awarding general and compensatory damages in an amount to be determined at trial, including but not limited to liquidated damages pursuant to Section 2(d)(i) of the Warrant Agreement for failure to deliver the Warrant Shares;

B. Awarding costs and disbursements, including attorney's fees, related to this dispute, including an award of attorney's fees and costs pursuant to Sections 6(e) and 6(g) of the Warrant Agreement;

C. Prejudgment and post-judgment interest; and

D. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues that are so triable.

Dated: May 14, 2024
Hartford, Connecticut

PLAINTIFF, ALTA PARTNERS, LLC

By: /s/ Jeffrey Mueller
Jeffrey Mueller
Matthew Letten
Day Pitney LLP
Goodwin Square
225 Asylum Street
Hartford, Connecticut 06103
T: (860) 275-0100
jmueller@daypitney.com
mletten@daypitney.com

Gregory Bruno
Day Pitney LLP
605 Third Avenue, 31st Floor
New York, New York 10158
T: (212) 297-5800
gbruno@daypitney.com

*Attorneys for Plaintiff Alta Partners, LLC*